IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REBECCA OSBORN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 13 C 621 |
| J.R.S.-I., Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Rebecca Osborn alleges that defendant J.R.S.-I., Inc. violated the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) (Count I), and also the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 (Count II). (Dkt. No. 1 ("Compl.").) Currently pending before the court is defendant J.R.S.-I.'s motion to dismiss the complaint. (Dkt. No. 18.) For the reasons explained below, J.R.S.-I's motion is denied.

FACTUAL BACKGROUND

Sometime during 2010 or 2011, plaintiff Rebecca Osborn was the victim of an identity thief who stole her social security number and other personal information. (Compl. ¶¶ 11-12.) The identity thief used that information to open and charge purchases to a Best Buy/HSBC credit account in Osborn's name. (*Id.* ¶ 12.)

Defendant J.R.S.-I., a debt collection agency, filed suit against Osborn in the Circuit Court of Cook County in August 2012 to collect the outstanding debt on the Best Buy/HSBC credit account. (*Id.* ¶ 15.) Osborn believes that prior to filing the lawsuit, J.R.S.-I. had not contacted her

regarding the debt. (*Id.* ¶ 16.) J.R.S.-I's complaint included the allegedly false statement that Osborn "opened an HSBC Best Buy credit card account . . . and made purchases and charged same to the account but has failed to make monthly payments called for on the account." (*Id.* ¶ 15; *see also id.* ¶ 24.) In addition, J.R.S.-I attached to the complaint an affidavit by Lawrence Spilg, president of J.R.S.-I. (*Id.* ¶ 19.) The affidavit included Spilg's allegedly false statement that "upon information provided to him by the transferor of the debt, he is familiar with certain facts surrounding the debt," including that "Plaintiff . . . is the party to whom the defendant, Rebecca Osborn is liable." (*Id.*; *see also id.* ¶ 24.) In reality, according to the complaint, Spilg only had a list of debts from HSBC including "minimal information." (*Id.* ¶ 20.) J.R.S.-I. was thus unaware that Osborn's debt was the result of identity theft, information it easily could have obtained if it had "obtained a complete file" (*Id.* ¶ 22) or "contacted plaintiff prior to suing her" (*Id.* ¶ 23).

In response to the lawsuit in state court, Osborn hired counsel and paid an appearance fee. (*Id.* ¶ 26.) Her counsel appeared, and the lawsuit was voluntarily dismissed by agreement of the parties with prejudice on December 27, 2012. (*Id.* ¶ 27.) Osborn now seeks statutory and actual damages for J.R.S-I.'s actions, which she alleges violate the FDCPA and the ICFA.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and

2

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

ANALYSIS

I. Count I: FDCPA

J.R.S.-I. characterizes Osborn's complaint as alleging that J.R.S.-I. is liable under the FDCPA because it failed to conduct an adequate investigation to ascertain Osborn's liability before filing suit. (Dkt. No. 20, at 3.) According to J.R.S.-I., those allegations are insufficient because "a debt collector can rely on information from its creditor client and is not obligated to investigate a debt's validity itself," a legal conclusion that Osborn disputes. (*Id.*)

The court need not resolve the question of a debtor's duty to investigate under the FDCPA, however, because J.R.S.-I. has mischaracterized Osborn's allegations. The complaint plainly alleges that J.R.S.-I. is liable for its false statements that Osborn had opened the Best Buy/HSBC account, that Spilg was familiar with the facts surrounding the debt, and that Osborn is liable to J.R.S.-I. (Compl. ¶¶ 15, 19.) According to Osborn, those false statements violate 15 U.S.C.

3

§ 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and 15 U.S.C. § 1692f, which prohibits the "use of unfair or unconscionable means to collect or attempt to collect any debt." It appears that Osborn's allegations regarding J.R.S.-I.'s insufficient investigation are meant to support the claim that Spilg's statement of familiarity with Osborn's account is false. (*See* Compl. ¶ 24 ("The affiant, Spilg, had no way of determining whether his company was suing the correct person.")). In any case, Osborn does not assert an independent claim on the basis of J.R.S.-I.'s lack of a pre-suit investigation.

Moreover, J.R.S.-I.'s duty to investigate, if any, is irrelevant to Osborn's false representation claims. The FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009). The presence of negligence, recklessness, or any other state of mind with respect to the false statements is therefore irrelevant, because a debt collector is liable for a false statement made in connection with collecting a debt, regardless of his intentions. *Id.*

J.R.S.-I. next contends that "[i]f plaintiff believed JRS' state collection complaint was false, misleading or unfair, she should have notified the state court judge instead of agreeing to the complaint's dismissal with no cost and with prejudice." (Dkt. No. 20, at 5.) J.R.S.-I.'s argument here is somewhat vague, and the court is not certain what issues it intends to raise. The assertion that Osborn should have raised her FDCPA claim in state court could be an assertion that Osborn's FDCPA claim is a compulsory counterclaim that is now barred because it was not raised as part of the state court proceeding. Any such argument would fail, however, because unlike the federal

courts, "Illinois does not have a compulsory counterclaim rule." S*peedy Gonzalez Landscaping, Inc. v. Hanover Specialties, Inc.*, No. 12 C 4728, 2012 WL 6568174, at *3 (N.D. Ill. Dec. 17, 2012) (Kennelly, J.) (citing 735 ILCS 5/2–608(a); *Kirk v. Bd. of Ed. of Bremen Cmty. High Sch. Dist. No. 228*, 811 F.2d 347, 355 n.11 (7th Cir. 1987).

More likely is that J.R.S.-I. is arguing that Osborn is improperly attempting to collect for a violation of Illinois state law through an FDCPA claim. That argument would be supported by J.R.S.-I.'s citation to *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). In *Beler*, the Seventh Circuit held that the FDCPA does not make a debt collector liable for "violat[ing] any other rule of positive law." *Id.* at 473. To the contrary, the FDCPA "creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law."[1] *Id.* at 474. J.R.S.-I. thus seems to be suggesting that its actions violated only a state rule, that Osborn's remedy was thus exclusively in state court, and that an FDCPA claim is not appropriate here.

The problem with that argument is that it is not clear what state rule J.R.S.-I. violated that Osborn should have enforced in state court. One possibility is that J.R.S.-I. violated Illinois Supreme Court Rule 137 (modeled on Rule 11 of the Federal Rules of Civil Procedure), which provides for sanctions if an attorney does not ensure that, "to the best of his knowledge, information, and belief formed after reasonable inquiry," his filings are "well grounded in fact and . . . warranted by existing law or a good-faith argument for the extension, modification, or

---

[1] The Seventh Circuit's comment explicitly applied to § 1692f. *Beler*, 480 F.3d at 474. J.R.S.-I.'s brief implicitly assumes, without arguing, that it applies to § 1692e as well.

5

reversal of existing law." It is not obvious, however, that J.R.S.-I.'s state court pleading fell afoul of this provision. Rule 137 requires only that an attorney believe alleged facts are "well-grounded" after "a reasonable investigation." J.R.S.-I.'s receipt of information about Osborn's alleged debt from HSBC likely would have satisfied this requirement. By contrast, J.R.S.-I. is strictly liable under the FDCPA for any false statement. There is no other state remedy or rule of which the court is aware that Osborn's FDCPA claim could conceivably be trying to enforce (and J.R.S.-I. cites none). *Beler*'s rule that the FDCPA was not meant to enforce other state and federal rules is thus not applicable here.

Finally, J.R.S.-I. contends cursorily that J.R.S.-I. cannot be liable for falsely stating that Osborn owed the Best Buy/HSBC debt, because Osborn plainly was aware of the identity theft and thus could not have been deceived. In support of that argument, J.R.S.-I. cites a single case: *Turner v. J.V.D.B. & Assocs., Inc.*, 483 F. Supp. 2d 631, 635 (N.D. Ill. 2007) (Denlow, J.). *Turner* held, following a bench trial on remand from the Seventh Circuit, that Turner had failed to prove an FDCPA claim under § 1692e when he already understood when he received the debt collector's communication that the debt he allegedly owed had been discharged in bankruptcy. The debt collector's communication thus could not have led Turner to believe his debt was still payable. *Id.* J.R.S.-I. contends that Osborn's knowledge that she did not owe the Best Buy/HSBC debt similarly forecloses her FDCPA claim here.

The *Turner* court's comments on Turner's knowledge that he did not owe the debt were, however, not controlling. Instead, the court applied the standard established by the Seventh Circuit, under which "our test for determining whether a debt collector violated § 1692e is

6

objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). The plaintiff's knowledge that his debt had been discharged was merely a single factor the court considered to determine whether the debt collector's communication would be deceptive to an unsophisticated consumer. More significantly, the court noted that Turner "has offered no further evidence addressing how the letter would be perceived to a reasonably objective but unsophisticated debtor," and held that Turner thus had not met his burden of proof. *Turner*, 483 F. Supp. 2d at 635. *Turner* thus dealt with a determination on the merits following a bench trial. It says nothing about the standard for pleading an FDCPA claim, where the plaintiff has no obligation to present any evidence.

Moreover, even though any unsophisticated, but reasonable, victim of identity theft would know that the debt to Best Buy/HSBC here was incurred by the identity thief, she may not know that she is not legally liable for that debt. One of the enumerated subsections of Section 1692e explicitly forbids "the false representation" of the "legal status of any debt." 15 U.S.C. § 1692e(2)(a). Under that provision, for example, a debt collector's dunning letter attempting to collect a debt discharged in bankruptcy may violate the FDCPA because "there is a danger that debt collectors would continue sending these letters, thinking that the recipient mightn't realize that his debts had been discharged or that the debt he was being dunned for, perhaps long after the bankruptcy, was among the debts that had been discharged." *Ross v. RJM Acquisitions Funding*

*LLC*, 480 F.3d 493, 495 (7th Cir. 2007). Similarly, an unsophisticated, but reasonable, victim of identity theft may not realize that she is not liable for debts incurred by the thief in her name.

Again, it is irrelevant that Osborn here apparently knew that she was not liable for the Best Buy/HSBC debt, as the ultimate question is whether "the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner*, 330 F.3d at 995. Osborn's complaint is adequate to plead that J.R.S.-I.'s actions would have deceived an unsophisticated consumer as to the consumer's liability for debts incurred by an identity thief.

J.R.S.-I. raises no other arguments in support of its motion to dismiss Count I, so all other potential arguments are waived.[2] J.R.S.-I.'s motion to dismiss Count I is thus denied.

II.    Count II: ICFA

Similar to the FDCPA, the ICFA makes a defendant liable if it causes damage to a plaintiff through

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce. . . .

815 ILCS § 505/2 (footnote omitted); *see also* 815 ILCS § 505/10a ("Any person who suffers

---

[2] In particular, J.R.S.-I. does not raise an issue explicitly left open in *Beler*, namely, "whether § 1692e covers the process of litigation" and thus "applies to complaints, briefs, and other papers filed in state court." *Beler*, 480 F.3d at 473. Subsequently, the Seventh Circuit held that the FDCPA does not apply to communications aimed to deceive state trial judges, such as an account statement attached to a complaint for the purpose of proving up a default judgment. *See O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941-44 (7th Cir. 2011). *O'Rourke* explicitly noted, however, that its holding was limited to communications directed solely to the state trial judge, and that "nothing in the opinion states or should be read to address whether the Act applies to the entire judicial process." *Id.* at 941 n.1.

actual damage as a result of a violation of this Act committed by any other person may bring an action against such person."). J.R.S.-I. argues first that Osborn's ICFA claim fails for the same reasons as her FDCPA claim. The court rejects that argument for the same reasons listed above.

J.R.S.-I. next contends that Osborn has failed to allege a deceptive act or unfair practice by J.R.S.-I., but instead alleges only acts by J.R.S.-I.'s attorney, to whom the ICFA does not apply. *See Cripe v. Leiter*, 703 N.E.2d 100, 107 (Ill. 1998) (ICFA does not extend to attorney's billing practices, which are regulated by the court). That assertion is demonstrably false. J.R.S.-I.'s complaint in state court was verified and accompanied by an affidavit sworn to by J.R.S.-I.'s president. (Dkt. No. 1, Ex. 1, App. A-B.) The statements contained therein are therefore statements of J.R.S.-I. *See* 735 ILCS 5/2-605(a) ("Any pleading, although not required to be sworn to, may be verified by *the oath of the party filing it* . . . . Corporations may verify by *the oath of any officer* or agent having knowledge of the facts." (emphases added)). Moreover, it is absurd to claim that J.R.S.-I., the plaintiff in the lawsuit, was not directing its attorney's actions in filing the debt collection suit.

J.R.S.-I. also contends that to state a claim under ICFA, a plaintiff must actually be deceived by the defendant's deceptive statement. In support, it cites *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009), in which the Illinois Supreme Court stated that "to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant." The Illinois Supreme Court's statement was limited to claims of deception under the Act, however. *See id.* ("If a consumer has neither seen nor heard any *such statement*, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." (emphasis

9

added)). Even though Osborn cannot maintain an action under ICFA for a deceptive statement because she was not deceived, ICFA also makes a defendant liable for "unfair" practices, and Osborn contends that her claim falls into that category, instead. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) ("Recovery may be had for unfair as well as deceptive conduct."). To determine if a given course of conduct is unfair, the court must consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id.* at 961. J.R.S.-I. does not argue that its behavior is not unfair conduct under those standards, and the court will not make its arguments for it. Accordingly, J.R.S.-I.'s motion to dismiss Osborn's ICFA claim is denied as well.

## CONCLUSION

For the reasons explained above, the motion to dismiss of defendant J.R.S.-I. (Dkt. No. 18) is denied. Osborn's Motion for Leave to Respond to New Matters in Defendant's Reply Brief (Dkt. No. 24) is terminated as moot. No appearance on 6/11/13 is necessary. J.R.S.-I.'s answer is due 6/21/13. Counsel are to confer pursuant to Rule 26(f) and jointly file a Form 52 on or before 7/3/13. The case is set for status and entry of a scheduling order at 9:00 AM on 7/9/13. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 7, 2013